UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RUTHLEONA CLEMENT,

        Plaintiff,

     - against -

UNITED HOMES, LLC, UNITED PROPERTY
GROUP, LLC, YARON HERSCHO, GALIT
NETWORK, LLC, FIRST UNITED MORTGAGE
BANKING CORPORATION, ALBERT
BENSHABAT, MAYA BENSHABAT,
AMERICAN SERVICING CORPORATION,
OCWEN LOAN SERVICING, LLC

        Defendant.

------------------------------------------------------------X

**MEMORANDUM AND ORDER**
10-CV-2122 (RRM)(RLM)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff *pro se* brings this action for monetary and equitable relief against three affiliated

real estate entities, United Homes, LLC ("United Homes"), United Property Group, LLC, and

Galit Network, LLC; the principal and officer of those entities, Yaron Herscho; First United

Mortgage Banking Corporation ("First United"), a mortgage lender; real estate appraisers Maya

and Albert Benshabat (the "Benshabats"); and two mortgage servicing companies, American

Servicing Corporation and Ocwen Loan Servicing, LLC ("Ocwen").  Plaintiff's claims—arising

out of the financing and purchase of her home in 2005—sound in fraud under the Fair Housing

Act, 42 U.S.C. §§ 3604, 3605, the Civil Rights Act, 42 U.S.C. §§ 1981, 1982, 1985, and the

Truth in Lending Act, 15 U.S.C. § 1601 *et seq*., as well as city and state law.  (Compl. (Doc.

No. 1) ¶ 3.)

Presently before the Court is the Benshabats' motion to dismiss all claims against them

for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For

the reasons set forth below, the Benshabats' motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

### I.       Facts

Plaintiff is a 31-year-old African-American woman who at all relevant times lived in Far Rockaway, Queens, and worked for a pharmaceutical company where she earned approximately $3,000 per month.  (*Id.* at ¶¶ 110, 114.)  During the summer of 2005, plaintiff became interested in buying her first house.  (*Id.* at ¶¶ 110–11.)  Plaintiff noticed an advertisement for United Homes, a realty company, on the number 2 subway line.  (*Id.* at ¶ 111.)  She called the phone number on the advertisement and made an appointment to tour homes that were for sale.  (*Id.*) The United Homes representative on the phone instructed plaintiff to come to the United Homes office for a meeting.  (*Id.*)  Several days later, plaintiff attended a meeting at the Brooklyn office of United Homes, where she was assured by a sales representative that United Homes would take care of every aspect of the home-buying process.  (*Id.* at ¶ 112.)  The sales representative then took plaintiff to see two homes in a predominantly minority neighborhood in Queens.  (*Id.* at ¶ 113.)  Plaintiff was interested in one property at 2920 Lewmay Road. (*Id.*)  The sales representative assured her that the new construction was high quality, and that the structure and roof were guaranteed up to 20 years.  (*Id.* at ¶ 113.)  The representative also assured plaintiff that she would be able to afford the house, in part through renting out the top two floors for $1,800. (*Id.* at ¶ 114.)

"A couple of days later," plaintiff attended another appointment at the United Homes' office, where she met with a mortgage banker named David Unger ("Unger") from First United. (*Id.* at ¶ 115.)  During the meeting, plaintiff filled out loan application forms, and Unger then told her she qualified for a loan for an amount up to the selling price of the home at $614,000.

[1] The following facts are taken from plaintiff's complaint.  However, it should be noted that, to a large extent, the complaint reproduces facts from, and brings the same claims as, the complaint filed in *Barkley v. Olympia Mortgage Co.*, 2007 WL 2437810 (E.D.N.Y. 2007).  (*See* 1: 104-cv-00875; Amd. Comp. (Doc. No. 78).)

(*Id.* at ¶ 116.)  He also told her that she would be able to rent out the two upstairs units for $1,800, as well as refinance the mortgage in five years to a lower, fixed rate.  (*Id.* at ¶ 117.)

On the following Monday, plaintiff received a call from the United Homes sales representatives informing her that the closing for the house was scheduled for the following day. (*Id.* at ¶ 118.)  Later that day, plaintiff contacted United Homes to ask for a later closing date, to allow her to obtain a lawyer and an appraisal report.  (*Id.* at ¶ 121.)  The United Homes representative told plaintiff that an appraisal report had already been prepared, and it would be delivered at the closing.  (*Id.* at ¶ 122.)  The representative also said that if plaintiff was unable to find a lawyer, one would be provided for her by United Homes at the closing, at no cost to plaintiff.  (*Id.*)  When plaintiff reminded the representative that she had not received a copy of either the mortgage note or the sales agreement to show to a lawyer, the United Homes representative convinced her that given the short amount of time, it would be best to review the documents with the lawyer to be provided by United Homes at the closing.  (*Id.* at ¶¶ 123–24.)

At the closing on August 5, 2005, plaintiff was provided with a lawyer, Jay Sanchez ("Sanchez").  (*Id.* at ¶ 126.)  She was then given a number of documents to sign.  (*Id.* at ¶ 127.) Although she expected Sanchez to review and interpret the legal language for her, Sanchez asked plaintiff to first review the documents, and then she could ask him any questions she may have. (*Id.* at ¶ 128.)  As plaintiff began to ask questions, everyone present pressured her to sign the documents, as it was "getting late" and there was another party who needed to use the office for a closing.  (*Id.* at ¶ 129.)

Plaintiff ended up signing two mortgages.  (*Id.* at ¶ 130.)  Although she was told that the first mortgage was going to have a monthly payment of $2,558.35, it instead required a monthly payment of $3,590.32.  (*Id.*)  As this was over $1,000 more than the monthly payment she

anticipated, plaintiff assumed that the two mortgages had been combined into one. (*Id.*) The mortgage was for $491,200 with an adjustable interest rate up to 11.25%. After signing the first note, she was presented with the second mortgage note with a monthly payment of $944.23. (*Id.* at ¶ 131.) The second mortgage was for $122,800.00, at a fixed 9.04% interest rate with payments over 180 months, with an unspecified "balloon payment" at the end of the 15-year loan period. (*Id.* at ¶ 131.) The monthly payments ($4,824.23) on plaintiff's two mortgages were 160% of her approximately $3,000 monthly salary. (*Id.* at ¶ 133.) Also, despite the earlier claims made by United Homes and Unger, insisting that plaintiff would be able to rent part of the house for $1,800 a month, she alleged that she has only been able to find a tenant willing to pay $1,300 a month. (*Id.* at ¶ 145.)

Upon moving into the house, plaintiff noticed a number of problems, including leaks in the roof and skylight, as well as water damage to the lower floor of the house. (*Id.* at ¶ 143.) Plaintiff complained to United Homes on a number of occasions about the defects in the house. (*Id.* at ¶ 144.) Although United Homes sent contractors to work on the house, plaintiff was forced to hire additional contractors to fix the incomplete and shoddy work. (*Id.*) As a result of the problems with her house, plaintiff has organized with other homeowners on her block facing similar issues. (*Id.* at ¶ 146.) She has also contacted elected officials, attorneys, and organizations, including the Congress of Racial Equality (CORE). (*Id.*)

Plaintiff also became suspicious that her house had been improperly appraised, and that she had paid more for the house than it was worth. (*Id.* at ¶ 147.) She hired an independent appraiser to review the appraisal given by United Homes, the review of which was pending at the time the complaint was filed. (*Id.*)

## II.    Procedural Background

On May 10, 2010, plaintiff filed a complaint against United Homes and related people and companies, First United, and Maya and Albert Benshabat ("the Benshabats"), who were responsible for the appraisal of plaintiff's home. (*Id.* at ¶¶ 2, 8.) In her complaint, plaintiff alleges numerous violations of federal, state, and local laws.[2] (*Id.* at ¶ 3.) Plaintiff argues that defendants engaged in a conspiracy to defraud minority home-buyers, including herself, through a predatory "property flipping" scheme, whereby United Homes bought houses and—in collusion with appraisers, mortgage brokers, and lawyers—sold the houses at artificially high prices to unwitting minority buyers, a process known as "reverse redlining." (*Id.* at ¶¶ 1–2, 36); *see Barkley v. Olympia Mortg. Co.*, No. 04-CV-875 (RJD)(KAM), 2007 WL 2437810, at *1–8 (E.D.N.Y. Aug. 22, 2007) (outlining a similar alleged scheme).

On September 3, 2010, plaintiff filed a motion for default judgment as to many of defendants. (Doc. No. 15.) This Court referred that motion to Magistrate Judge Mann, who, due to concerns as to actual notice, granted defendants additional time to enter appearances and respond to the complaint. (Memorandum & Order (Doc. No. 16).) Defendants United Homes, United Property Group, Hershco, and Galit Network filed an answer to the complaint alleging counter-claims against all other defendants. (Doc. No. 17.) The Benshabats filed a motion to dismiss. (Doc. No. 25.) Thereafter, Judge Mann issued an order on plaintiff's original motion for default, denying the motion with respect to all defendants except for First United, who had yet to appear. (Doc. No. 30.) Judge Mann found that plaintiff would be entitled to an entry of default against First United, that First United had waived any timeliness defense by failing to

---

[2]Plaintiff alleges that one or all of the defendants violated the following laws: New York State General Business Law § 349; fraud; civil conspiracy to defraud; Fair Housing Act, 42 U.S.C. §§ 3604, and 3605; Civil Rights Act, 42 U.S.C. §§ 1981, 1982, and 1985; New York State Human Rights Law, Executive Law § 296(5); Title 8 of the New York City Administrative Code; negligence; Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

appear and raise the defense, and that First United had admitted all well-pleaded allegations as to liability. (*Id.* at 2–3.) However, Judge Mann deferred an inquest on damages until after disposition of the claims against the other defendants. (*Id.* at 4.) The Clerk of Court never made an entry of default, and this Court has not adopted Judge Mann's order as to default. Plaintiff also ultimately withdrew the action as against defendant Ocwen Loan Servicing, LLC. (Stip. Of Dismissal (Doc. No. 36).)

Turning to the defendants bringing the present motion, plaintiff accuses the Benshabats of providing a "made-to-order" appraisal that intentionally overstated the value of her home. (*Id.* at ¶ 72.) The Benshabats allegedly arrived at the inflated appraisal figure by only including sales made by United Homes (not the value of all surrounding neighborhood homes) without including the sales history. (*Id.* at ¶ 73–74.) The Benshabats also allegedly included the value of anticipated construction and new features, without devaluing the property for existing problems. (*Id.* at ¶ 75.) The appraisal, in turn, furthered United Home's ability to charge higher prices for faulty houses, and enabled First United to provide large, unfavorable mortgages to minority homebuyers. (*Id.* at ¶ 2.)

On November 12, 2010, the Benshabats filed a motion to dismiss. (Doc. No. 25.) The Benshabats argue, among other things, that according to 12(b)(6) of the Federal Rules of Civil Procedure, many of plaintiff's claims against the Benshabats failed to state a claim for which relief could be granted, as the claims are time-barred by the relevant statutes of limitations. Plaintiff failed to file any opposition the present motion to dismiss. (*See* Ltr. from Counsel for Moving Defs. (Doc. No. 26).) Discovery has been ongoing, and the Benshabats, in addition to all other remaining defendants, recently filed a request for a premotion conference in order to

seek leave to file a summary judgment motion on grounds including the statute of limitations. (Doc. Nos. 74-77.)

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." Harris, 572 F.3d at 71 (citation omitted). A complaint need not contain "'detailed factual allegations,'" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Rather, the plaintiffs' complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157–58 (2d Cir. 2007)).

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

While *pro se* plaintiffs must satisfy these pleading requirements, federal courts are "obligated to construe a *pro se* complaint liberally." *See Harris*, 572 F.3d at 71–72 (2d Cir. 2009) (citations omitted). In other words, trial courts hold *pro* se complaints to a less exacting standard than they apply to complaints drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Boykin v. KeyCorp*, 521 F.3d 202, 213–14. Since *pro se* litigants "are entitled to a liberal construction of their pleadings, [their complaints] should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citation and internal quotation marks omitted). When a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, however, the court should not hesitate to dismiss his claim. *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997); *see also Johnson v. City of New York*, 669 F. Supp. 2d 444, 448 (S.D.N.Y. 2009) ("[T]o survive a motion to dismiss, even a *pro se* plaintiff must plead enough facts to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)).

## DISCUSSION

The Benshabats' motion to dismiss raises multiple grounds for dismissal, including a challenge to the timeliness of the complaint. As the Court finds that the movants' timeliness arguments have merit, only those grounds are discussed below.

### I.      Claims Barred by Reason of Statute of Limitations

Pursuant to Federal Rule of Civil Procedure 8(c)(1), "]t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Staehr v. Hartford Fin. Servs.*

*Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). However, a defendant may raise a pre-answer statute of limitations defense during a Rule 12(b)(6) motion to dismiss "[w]here the dates in a complaint show that an action is barred by a statute of limitations." *Ghartley v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). On a motion to dismiss, the Court must "accept all of the factual allegations [in the complaint] as true, and draw all reasonable inferences in the plaintiff's favor." *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 298 (2d Cir. 2006). "'While a statute-of-limitations defense may be raised in a motion to dismiss under [Rule] 12(b)(6), such a motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir.1989) (citation omitted)). Therefore, the Court can only grant a motion to dismiss based on statute of limitations grounds if there is no factual question as to whether the alleged violations occurred within the statutory period. *See Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 468 (S.D.N.Y. 1999).

### A. Applicable Statutes of Limitations[3]

As explained below, plaintiff's FHA claims are governed by a two-year limitations period, and her fraud claim has at least a six-year limitations period. All other claims are governed by three-year limitations periods.

### 1. Fair Housing Act Claims pursuant to 42 U.S.C. §§ 3604, 3605

To bring a claim under either 42 U.S.C. §3604 or §3605 of the Fair Housing Act ("FHA"), "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an

---

[3] Plaintiff's complaint also includes a claim under the Truth in Lending Act, 15 U.S.C. § 1601, which must be brought within one year from "the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "In cases involving 'closed-end credit' transactions, such as mortgages, the 'occurrence of the violation' typically refers to the date on which a plaintiff enters into a loan agreement.'" *Barkley*, 2007 WL 2437810 at *17. Plaintiff does not name the Bashabats in its TILA allegations. (*See* ¶ 302 (naming only First United).) However, as plaintiff alleged that she entered into the mortgage in or around August 2005, any TILA claim is time-barred.

alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A); *Adams v. Han*, No. 11-603, 2012 WL 1352692, at *1 (2d Cir. Apr. 19, 2012).

### 2. Civil Rights Claims pursuant to 42 U.S.C. §§ 1981, 1982, and 1985

"As there is no federal statute of limitations governing the Reconstruction-era civil rights statutes . . . 'federal courts should select the most appropriate or analogous state statute of limitations' to determine the proper limitations period." *Bacon v. Suffolk Legislature*, No. 05-CV-4307 (JFB)(ETB), 2007 WL 2288044, at *4–5 (E.D.N.Y. Aug. 8, 2007) (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987)). For §§ 1982 and 1985 actions, federal courts in New York follow the three-year limitations period set by New York Civil Practice Law and Rules ("NYCPLR") § 214(5). *See id.* (§ 1985); *see also Paige v. Police Dep't*, 264 F.3d 197, 199 n.2 (2d Cir. 2001) (§ 1985); *Barkley*, 2007 WL 2437810 at *22 (§ 1982); *see also Bacon*, 2007 WL 2288044 at *5 (noting that neither the Supreme Court nor the Second Circuit have ruled as to § 1982).

The applicable statute of limitations for plaintiff's § 1981 claim turns on whether plaintiff states a claim under the statute as it was originally passed, or under its 1991 Amendments. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). In 1991, Congress amended § 1981, expanding the scope of the phrase to "make and enforce contracts" to include "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," thereby adding new causes of action. *Id.* at 383. Where a plaintiff brings claims under the new causes of action created by the 1991 Amendments, the statute of limitations is governed by 28 U.S.C. § 1658, which applies a four-year limitations period for civil actions "arising under an Act of Congress enacted after the date of [its] enactment" in 1990. *Id.* However, where a plaintiff brings a claim established by the original § 1981, that claim is subject to the "'borrowed' limitations periods" from state law."

*Id.* at 382. Here, plaintiff claims that she was targeted based on her race to be fraudulently induced to enter into a contract. "Plainly, this claim addresses plaintiff's rights to make contracts and therefore arises under the original statute. Accordingly, plaintiff's first cause of action is subject to a three-year statute of limitations." *Mahmud v. Kaufmann*, 496 F. Supp. 2d 266 (S.D.N.Y. 2007) (citing *Jones*, 541 U.S. at 382); *see Barkley*, 2007 WL 2437810 at *14 (holding that the three-year statute of limitations applied to a "reverse redlining" § 1981 claim in a nearly identical case).

### 3. Claims pursuant to State and City Law

New York State Human Rights Law ("NYSHRL") § 296(5) and New York General Business Law § 349 are governed by the three-year limitations period set by § 214 of the NYCPLR for "an action to recover upon a liability, penalty or forfeiture created or imposed by statute." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (§ 296(5)); *Barkley*, 2007 WL 2437810 at *22; *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, No. 08–CV–4207 (JFB)(WDW), 2012 WL 1038804, at *9 (E.D.N.Y. Mar. 28, 2012) (§ 349).

Plaintiff also alleges unlawful discriminatory practices in violation of Title 8 of the New York City Administrative Code ("NYC Admin Code"), including §§ 8-107.5 and 8-107.6. (Compl. ¶ 251.) "A civil action commenced under [Title 8] must be commenced within three years after the alleged unlawful discriminatory practice . . . ." NYC Admin Code § 8-502(d); *Bermudez*, 783 F. Supp. 2d at 574.

Plaintiff also alleges common law negligence, which is "an action to recover damages for a personal injury." *Id.* § 214(5). The claim is therefore governed by § 214 of the New York Civil Practice Law and Rules, which sets a three-year limitations period for the commencement of an action. *See, e.g., Barkley*, 2007 WL 2437810 at *22; *Syracuse v. Loomis Armored US, LLC*, No. 11–CV–00744 (MAD/GHL), 2012 WL 88332, at *4 (N.D.N.Y. Jan. 11, 2012) (negligence).

Under New York law, plaintiff's cause of action in fraud must be commenced within two years from the time the fraud was discovered, or with the exercise of due diligence, should have been discovered, or six years from the date the alleged fraud was committed, whichever is longer. N.Y. C.P.L.R §§ 213(8), 203(g); *Cappelli v. Berkshire Life Ins. Co.*, 713 N.Y.S.2d 756, 757 (N.Y. App. Div. 2000).

### B. Application of Statute of Limitations to Plaintiff's Claims

In her complaint, plaintiff presents a "review" of "60 properties sold by the United Homes entities" "during 2002 and 2003." (Compl. ¶ 37.) Regarding her own experience, plaintiff alleges that her interaction with defendants generally began in "summer of 2005." (*Id.* at ¶ 111.) She further alleges that defendants Benshabats conducted the appraisal on her home "from June to August 2005," (*id.* at ¶ 76), and that the transaction closed on August 5, 2005, (*id.* at ¶ 126). Plaintiff filed her complaint on May 10, 2010, (*see* Doc. No. 1), almost five years after the most recent alleged conduct. Because plaintiff's claims, save for common law fraud, are subject to statutes of limitations of three-years or less, all such claims are time-barred unless the Court finds that the accrual of such claims was delayed or equitable tolling is warranted.

### C. Issues Related to When Plaintiff's Claims Accrued

There are two doctrines that could delay the commencement of the statutory period, so as to make some of plaintiff's claims timely. The diligence-discovery rule could delay the accrual of plaintiff's claims until she discovered her injury. Or the continuing violation theory could extend the injury itself, thereby also delaying the accrual of the cause of action. However, as discussed below, neither doctrine sufficiently delays the claims in plaintiff's complaint as it is written.

### 1. Discovery Rule of Accrual

"[F]ederal rules of accrual apply even when we "borrow" an analogous state statute of limitations." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999). Under federal law, an action normally accrues at the time of injury. *See, e.g.*, *Kronisch*, 150 F.3d 112, 121 (2d Cir. 1998). However, "where plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted, the so-called 'diligence-discovery rule of accrual' applies." *Id.* Under this rule, "accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." *Corcoran*, 202 F.3d at 544.

Claims under the FHA, as well as under §§ 1981, 1982 and 1985, are subject to the discovery rule and thus accrue when a "plaintiff knows or has reason to know of the injury that serves as the basis for the action." *Dombrowski v. City of New York*, 116 F.3d 465, *1 (2d Cir. 1997) (§ 1981); *see Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997) (§ 1985); *Ungar v. New York City Housing Auth.*, No. 06-CV-1968, 2009 WL 125236, at *14 (S.D.N.Y. Jan. 14, 2009) (suggesting that FHA claims accrue when "plaintiff knows or has reason to know of the injury which is the basis of his action"); *see also Singleton v. City of New York*, 632 F.2d 185, 191–93 (2d Cir. 1980) ( "[For federal claims,] [t]he crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action. . . . Where no single act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury, the cause of action may not accrue until the wrong becomes apparent."); *but see Rodriguez v. Village of Island Park, Inc.*, No. 89-CV–2676, 1991 WL 128568, at *7 (E.D.N.Y. July 2, 1991) ("No cases in this circuit have specifically decided whether a discovery standard applies for claims under § 1982 or the Fair Housing Act . . . .")

Discovery of the "critical facts" of injury and causation "requires only knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it . . . . [A] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim. Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice." *Corcoran*, 202 F.3d at 544 (internal quotations omitted). This reasoning has been applied to the context of employment discrimination, where a plaintiff's claim begins to run when he learns of the discriminatory conduct, e.g. the unlawful termination, not when the plaintiff has reason to know of a possibly discriminatory motive for that conduct. *See Morris v. Broadridge Financial Services, Inc.*, No. 10–CV–1707 (JS)(AKT), 2010 WL 5187669, at *3 (E.D.N.Y. Dec. 14, 2010) (collecting cases).

The allegedly discriminatory, deceptive, and negligent practices in plaintiff's complaint occurred in "summer 2005" up to the closing date August 5, 2005. (Compl. ¶¶ 76, 111, 126.) It is at this time that plaintiff suffered injury. However, plaintiff allegedly did not know of her injuries at that time. She does not specify when she moved into her home, but alleges that "many warranty problems came to her attention within months." (*Id.* at ¶ 143.) Plaintiff alleges that she contacted defendants directly to discuss the problems, and she "organized with the other homeowners on her block facing similar issues and contacted various elected officials, attorneys, [and] help organizations." (*Id.* at ¶ 146.) She "became increasingly suspicious that she had paid more for the house than it was actually worth" "in the years after the closing." (*Id.* at ¶ 147.) In 2010, she allegedly hired an appraiser to review the appraisal performed by defendants. (*Id.*)

Even if she did not know of its legal significance at the time, plaintiff learned of her injury "within months" of moving into her new home, when the "warranty problems came to her attention." While plaintiff does specify the exact date she learned of these problems, if it was "within months" of the closing on August 5, 2005, it is still well outside the three-year statutory period, as plaintiff did not file her complaint until five years later. The fact that plaintiff only became "increasingly suspicious" in the years that followed does not prevent accrual, as plaintiff had "reason to know" of the injury.

### 2. Continuing Violation Theory

Many of plaintiff's claims concern discrete violations of laws that prohibit finite conduct, which, aside from the discovery rule discussed above, accrue on the date of the injury. *See, e.g.*, *Gould v. Berk & Michaels*, P.C., No. 89-CV-5036 (SWK), 1991 WL 152613, at *5 (S.D.N.Y. July 29, 1991) (actions for professional negligence accrue on the date the injury is suffered); *Radin v. Albert Einstein Col. of Med. of Yeshiva Univ.*, No. 04-CV-704 (RPP), 2005 WL 1214281, at *16 (S.D.N.Y. May 20, 2005) (actions under Business Law § 349 accrue when plaintiff has been injured by the deceptive act or practice).

However, some of plaintiff's claims concern unlawful "practices," which can occur over a period of time, thereby constituting a "continuing violation." The statute of limitations for certain discrimination claims, including the FHA, can be effectively extended under the "continuing violation" theory, whereby the plaintiff claims, not just an isolated violation, but an ongoing policy of discrimination which extend into the limitations period. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982); *Grimes v. Fremont General Corp.*, 785 F. Supp. 2d 269, 291–92 (S.D.N.Y. 2011). In addition to her FHA claims, the continuing violation theory can be applied to plaintiff's federal and state civil rights claims, as well as the City Administrative Code violations. *See e.g.*, *Cornwell v. Robinson*, 23 F.3d 694, 703–04 (2d Cir.

1994) (§ 1985); *Bermudez v. City of New York.*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011)

(§ 1981); *Thompson v. Metropolitan Life Ins. Co.*, 149 F. Supp. 2d 38, 54–55 (S.D.N.Y. 2001)

(§ 1982); *Bermudez*, 783 F. Supp. 2d at 574 (NYSHRL and NYC Admin Code)*.*

Where there are continuing violations that give rise to a claim of a discriminatory policy,

the statute of limitations period does not begin to run until the end of the "last asserted

occurrence" of a discriminatory policy. *Havens Realty Corp.*, 455 U.S. at 363; *see also*

*Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) ("To bring a claim within the

continuing violation exception, a plaintiff must at the very least allege that one act of

discrimination in furtherance of the ongoing policy occurred within the limitations period."); *but*

*see National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (holding that a "continuing

violation" must involve a discriminatory practice, not serial discrete acts); *but see also Patterson*,

375 F.3d at 220 (no recovery for discrete acts outside the statutory time period).

However, plaintiff does not allege a discriminatory practice that extends into the

limitations period. Her complaint does not adequately allege any actions on the part of any

defendants after 2005, let alone actions supporting an ongoing discriminatory policy. Plaintiff

does, however, allege additional acts of discrimination by defendants, pursuant to an alleged

discriminatory policy, directed toward *other* victims. *Barkley v. Olympia Mortgage Co.*, a case

substantially similar to this one, recognized that violations subsequent to those directed at the

plaintiffs in that case could be used to support their allegation of an unlawful policy. *Id.* The

*Barkley* court reviewed alleged sales of property by United Homes, also a defendant in this case,

in minority neighborhoods during the statutory period, and reasoned that plaintiffs had

sufficiently alleged a policy of FHA violations, even though the violations were not directed at

any of the plaintiffs in the case. *Id.* Despite that the *Barkley* plaintiffs' individual claims fell

outside of the two-year statutory period, the court allowed the claims to stand under the continuation violation theory. *See Barkley*, 2007 WL 2437810, at *16.

Here, however, the continuing violation doctrine does not apply. Plaintiff does not allege any violations *following* her closing on August 5, 2005. The "review" of sales in plaintiff's complaint references only sales taking place *before* her own, and thus even farther outside the statutory period. (*Id.* at ¶ 37.) Because plaintiff only makes generalized allegations about a continuing policy that could even possibly extend into the statutory period, the continuing violation theory cannot be applied to render her claims timely. *See, e.g.*, *Grimes*, 785 F. Supp. 2d at 292 (finding that continuing violation doctrine did not apply where plaintiff made only general assertions about defendants' conduct within the limitations period, distinguishing *Barkley*, wherein plaintiffs made concrete allegations regarding sales during the statutory period); *see also, e.g.*, *Shelter Inc. Realty v. City of New York*, No. 01–CV–7015, 2007 WL 29380, at *12 (E.D.N.Y. Jan. 4, 2007).

### D. Equitable Tolling

Because plaintiff's claims are not timely, her complaint must be dismissed unless the Court will toll the limitations period. For plaintiff's federal claims, "[w]here the federal statute does not provide a statute of limitations and a federal court 'borrows' a state statute of limitations, the court also 'borrows' the applicable state law tolling rules unless those rules are inconsistent with, or would frustrate the purposes of, the federal law." *Corcoran*, 202 F.3d at 543; M.*D. v. Southington Bd. of Educ.*, 334 F.3d 217, 223 (2d Cir. 2003) (citation omitted).

The court may "equitably toll" the statute of limitations where a litigant can show that she "has been pursuing h[er] rights diligently" and that "some extraordinary circumstance stood in h[er] way." *Torres v. Barnhart*, 417 F.3d 276 (2d Cir. 2005) (citing *Pace v. DiGuglielmo*, 544

U.S. 408 (2005)).[4]  "Under the doctrine of "fraudulent concealment," the statute of limitations

will be equitably tolled if a plaintiff establishes the following:

> (1) the defendant concealed from her the existence of her cause of action during
> the statutory period, (2) she commenced the action within the statutory period
> from the time that she became aware of her claim, and (3) her continuing
> ignorance was not attributable to lack of diligence on her part.

*Council v. Better Homes Depot, Inc.*, 2006 WL 2376381, *8–11 (E.D.N.Y. Aug. 16, 2006)

(quoting *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)).

Furthermore, the elements of fraudulent concealment must be pled with specificity pursuant to

Federal Rule of Civil Procedure 9(b).  *Grimes*, 785 F. Supp. 2d at 291; *Barkley*, 2007 WL

2437810, 16 (citing *Armstrong v. McAlpin*, 699 F.2d 79, 90 (2d Cir. 1983)).

To allege the first prong, concealment, "a plaintiff must either plausibly allege that the

defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that

the wrong itself was of such a nature as to be self-concealing."  *Singh v. Wells*, 445 Fed. App'x

373, 378 (2d Cir. 2011) (quoting *Hendrickson,* 840 F.2d at 1083) (internal quotation marks

omitted).  Here, plaintiff alleges that defendants scheduled her closing so as to make it difficult

for her to have an attorney review her documentation, actively discouraged her from bringing an

attorney to her closing, and provided an attorney for her at the closing with the allegedly false

implication that he would advise her according to her interests.  "The act of employing ostensibly

independent legal counsel as part of a predatory lending scam has been held to satisfy the

---

[4] The state standard for equitable tolling is substantially similar to the federal standard. "Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (internal quotation marks omitted).  Equitable tolling is applicable where: (1) the defendant has wrongfully deceived or misled the plaintiff in order to conceal a cause of action, and (2) the plaintiff's failure to commence the action within the statutory period is not due to lack of diligence on her part. *Council v. Better Homes Depot, Inc.*, 2006 WL 2376381, *11–12 (citing *Gleason v. Spota*, 599 N.Y.S.2d 297 (N.Y. App. Div. 1993); *Ramsay v. Imogene Bassett Hosp.*, 495 N.Y.S.2d 282 (N.Y. App. Div. 1985)).

concealment element by several district courts in this circuit." *Barkley*, 2007 WL 2437810 at *17 (citing cases).

As for the third prong, at least one court in this circuit found that plaintiffs satisfied the due diligence requirement, since, despite the defective condition of their homes, they would not have known they were the victims of a discriminatory practice "[w]ithout meeting other United Homes clients or explaining their circumstances to an attorney who responsibly represented their interests." *Id.* Here, however, plaintiff does not specify when she met with other member of the community. She fails to meet the second prong for the same reason—she has failed to specify a date within the statute of limitations on which she learned of her cause of action. *Id.* at 17; *see also Council*, 2006 U.S. Dist. LEXIS 57851, at *27–28. Therefore, on the current complaint, plaintiff does not sufficiently allege fraudulent concealment.[5]

Therefore, all of plaintiff's claims, aside from common law fraud, are untimely, and the current complaint should be dismissed. As discussed below, plaintiff shall be given an opportunity to respond to the Court with any additional facts that she believes can be plead in good faith, either as to unlawful conduct within the statutory period, or as to conduct justifying equitable tolling.

### E. *Sua Sponte* Dismissal of Claims Against Other Defendants

"Where one defendant has successfully raised a statute of limitations defense with respect to a particular claim, a court may also dismiss the claim *sua sponte* as to similarly situated defendants." *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 623 (S.D.N.Y. 1999); *see Leonhard v. United*

---

[5] Defendants argue that the filing of a lawsuit by private parties puts plaintiffs with identical claims on notice of their potential claims. *See Korwek v. Hunt*, 646 F. Supp., 953, 958 (S.D.N.Y.1986), *aff'd*, 827 F.2d 874 (2d Cir. 1987) (citing *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir. 1975)); *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 381 F. Supp. 2d 334, 339 (S.D.N.Y. 2005). However, the lawsuits in the cited cases involved widely publicized suits based on the exact same conduct, which is not the case here. Furthermore, the *Barkley* case, which lodged the same claims against many of the defendants in this case, was filed before plaintiff even closed on her house, rendering the legal fiction of notice actually impossible in this case.

*States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980). Here, the analysis above applies to the non-moving defendants as much as the moving defendants. Aside from common law fraud, plaintiff has not alleged any timely claims against any defendants within the statutory period. Therefore all such claims should be dismissed as against all defendants.

The Second Circuit has cautioned against *sua sponte* dismissal on untimeliness grounds without giving the litigant notice and an opportunity to be heard. *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedure, however, do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses.") (citations omitted). Here, plaintiff has been given notice and an opportunity to be heard as to timeliness, an opportunity she declined to pursue.[6] However, as the present motion was brought by only some of defendants in this case, and out of an abundance of caution, the Court will give plaintiff an opportunity to be heard as to timeliness with respect to the claims against the other defendants.[7]

The Court finds that *sua sponte* dismissal is warranted as to First United as well, notwithstanding its failure to appear. In her order, Judge Mann specifically declined to take up the issue of the timeliness of plaintiff's complaint, as First United had arguably waived such a defense by failing to appear. Although Judge Mann's analysis is sound, given that the Court has now taken up the timeliness issue *sua sponte* as to the remaining defendants, there is no apparent reason why the Court should decline to do so with respect to First United as well. *Cf.*

*Eppendorf-Netheler-Hinz GmbH v. Enterton Co.*, 89 F. Supp. 2d 483, 488 (S.D.N.Y. 2000), *aff'd*

---

[6] Plaintiff failed to file any opposition to the present motion to dismiss. (*See* Ltr. from Counsel for Moving Defs. (Doc. No. 26).)
[7] Notably, all other remaining defendants raised a statute of limitations defense in their answers, and all have recently sought leave to file for summary judgment on grounds including the statute of limitations. (Answers (Doc. Nos. 6, 17); Premotion Conference Requests (Doc. Nos. 74-77).)

14 Fed. App'x 102, 104 (2d Cir. 2011) (affirming summary judgment on grounds of laches as well as *sua sponte* vacatur of a default judgment against a non-appearing defendant and dismissal as to that defendant on the same grounds).

The Court hereby gives notice to plaintiff that her complaint is subject to dismissal on the basis of untimeliness unless she can allege plausible facts going to the discovery of her injury, further conduct by defendants, or entitlement to tolling of the statute of limitations, with respect to all claims save for state law fraud, against all remaining defendants, including First United.

## II.     Plaintiff's State Law Fraud Claim and Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(c)(3), a district court has the discretion to decline to exercise supplemental jurisdiction over state claims after the dismissal of all claims over which it had original jurisdiction or over claims raising "a novel or complex issue of State law."  28 U.S.C. § 1367(c).  "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1998).  Justification for exercising supplemental jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, plaintiff's state law fraud claim is timely.  However, the Court has currently dismissed all of plaintiff's federal claims against the moving defendants.  Because the Court is ordering plaintiff to show cause why the claims against the other defendants should not also be dismissed, and because the Court is allowing plaintiff leave to amend some of the allegations related to her federal claims, the Court finds that judicial economy, convenience, and fairness

would not be served by exercising supplemental jurisdiction. If plaintiff amends to successfully allege a timely federal cause of action, the Court will entertain plaintiff's state law fraud claim at that time; conversely, if plaintiff fails to state a timely federal claim, the Court will decline to exercise supplemental jurisdiction over the state law fraud claim. Accordingly, the moving defendants' motion to dismiss plaintiff's state law fraud claim is denied without prejudice and may be renewed if plaintiff amends to adequately plead a timely federal cause of action.

## CONCLUSION

For the reasons stated above, the Benshabats' motion to dismiss plaintiff's state law fraud claim, is DENIED without prejudice, and their motion to dismiss all other claims is GRANTED. Plaintiff is ORDERED TO SHOW CAUSE on or before January 21, 2013 why the Court should not dismiss all claims, except for the state law fraud claim, against the remaining non-moving defendants on statute of limitations grounds for the reasons above. If plaintiff does not comply with this Order, all claims against all defendants will be dismissed with prejudice, and that the Court will decline to exercise its supplemental jurisdiction with respect to her state law fraud claim.

The Clerk of Court shall mail a copy of this Memorandum and Order to plaintiff.


SO ORDERED.


Dated: Brooklyn, New York
      December 27, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge