UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

RUTHLEONA CLEMENT,

    Plaintiff,

  - against -

UNITED HOMES, LLC, UNITED PROPERTY GROUP, LLC, YARON HERSCHO, GALIT NETWORK, LLC, FIRST UNITED MORTGAGE BANKING CORPORATION, ALBERT BENSHABAT, MAYA BENSHABAT, AMERICAN SERVICING CORPORATION, OCWEN LOAN SERVICING, LLC,

    Defendants.

------------------------------------------------------------X

**MEMORANDUM AND ORDER**
10-CV-2122 (RRM) (RLM)

ROSLYNN R. MAUSKOPF, United States District Judge.

  *Pro se* plaintiff Ruthleona Clement brings this action for monetary and equitable relief against three affiliated real estate entities – United Homes, LLC ("United Homes"), United Property Group, LLC, and Galit Network, LLC – along with Yaron Herscho, the principal and officer of those entities (collectively, "the UH Defendants"); mortgage lender First United Mortgage Banking Corporation ("First United"); real estate appraisers Maya and Albert Benshabat ("the Benshabats"); and two mortgage servicing companies, American Servicing Corporation ("ASC") and Ocwen Loan Servicing, LLC ("Ocwen"). Clement's claims – arising out of the financing and purchasing of her home in 2005 – sound in discrimination and fraud under the Fair Housing Act, 42 U.S.C. §§ 3604, 3605, the Civil Rights Act, 42 U.S.C. §§ 1981, 1982, 1985, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, as well as state and city law. (Compl. (Doc. No. 1) ¶ 3.) For the reasons described below, the Court finds that each of Clement's legal claims, except for her state-law fraud claim, is untimely and, therefore,

dismissed. The Court declines to exercise supplemental jurisdiction over the state-law fraud claim and dismisses it without prejudice.

## BACKGROUND

The facts underlying this litigation are more fully enumerated in the Court's December 27, 2012 Memorandum and Order ("the December 27th Order"), familiarity with which is assumed. *See Clement v. United Homes*, *LLC*, 914 F. Supp. 2d 362 (E.D.N.Y. 2012). Stated succinctly, Clement is a black woman who, in 2005, purchased a house in Far Rockaway, Queens from United Homes. Clement alleges that she was misled about the monthly payments required under the mortgages that she obtained to pay for the house, that various irregularities and improprieties infected the closing, and that the house was both inaccurately appraised and defective. *See id.* at 366–67.

On May 10, 2010, Clement filed the instant complaint against the UH Defendants, First United, and the Benshabats, the last of whom had appraised Clement's home.[1] (Compl. ¶¶ 2, 8.) Clement alleges that defendants committed numerous violations of federal, state, and city laws.[2] (*Id.* ¶ 3.) Those violations, Clement contends, assumed the collective form of a conspiracy to defraud and discriminate against minority homebuyers, including herself, through a predatory "property flipping" scheme. To that end, United Homes purchased residential houses and – in collusion with mortgage brokers, appraisers, and attorneys – sold the houses at artificially high prices to unwitting minority buyers with little or no homeownership experience and minimal financial acumen, a process known as "reverse redlining." (*Id.* ¶¶ 1–2, 36.) *See Barkley v.*

---

[1] ASC and Ocwen were impled as third-party defendants.
[2] Plaintiff claims that one or all of defendants violated the following statutes: the Fair Housing Act, 42 U.S.C. §§ 3604, 3605; the Civil Rights Act, 42 U.S.C. §§ 1981, 1982, 1985; the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; New York State General Business Law § 349; New York State Human Rights Law, Executive Law § 296(5); and Title 8 of the New York City Administrative Code. Clement further alleges that one or all of defendants committed fraud, civil conspiracy to defraud, and negligence under New York common law.

2

*Olympia Morg. Co.*, No. 04-CV-875 (RJD) (KAM), 2007 WL 2437810, at *1–8 (E.D.N.Y. Aug. 22, 2007) (outlining a similar scheme purportedly orchestrated by the UH Defendants and denying the defense motion for summary judgment).[3]

On November 12, 2010, the Benshabats moved in writing to dismiss the complaint. (Doc. No. 25.) In its December 27th Order, the Court partially granted the Benshabats' motion to dismiss on statute-of-limitations grounds, dismissing all claims against the Benshabats except for Clement's state-law fraud claim. The Court ordered Clement to show cause why the claims against the other defendants should not be dismissed on this same basis. *See Clement*, 914 F. Supp. 2d at 377. The Court specifically directed Clement to "allege plausible facts going to the discovery of her injury, further conduct by defendants, or entitlement to tolling of the statute of limitations, with respect to all claims save for state law fraud, against all remaining defendants, including First United." *Id.* at 376.

On January 7, 2013, Clement filed her response to the Order to Show Cause. ("Pl.'s Resp." (Doc. No. 80).) Clement provided six exhibits that, she maintains, "evidence that [she] commenced actions within the statutory period from the time [she] became aware of [her] claim." (*Id.* at 2.) Those exhibits include: (1) a February 13, 2006 letter to United Homes in which Clement complained about defects that she had discovered in her house (*id.* at 8–10); (2) a July 1, 2006 letter that Clement drafted on behalf of her homeowner's association to a "project developer," in which Clement requested repairs to the constituent homes in the association (*id.* at 11–18); (3) minutes from an October 9, 2007 meeting between the homeowner's association and a representative of the Congress for Racial Equality, at which Clement and her fellow homeowners learned that United Homes had been accused in the past of predatory lending

---

[3] In *Barkley*, the UH Defendants were eventually tried by a jury and found guilty of unfair and deceptive trade practices, fraud, and conspiracy to defraud, but not guilty of claims alleging discrimination. (*See, e.g.*, No. 04-CV-875 at ECF Doc. No. 602.)

practices (*id.* at 23–27); and an April 4, 2008 consultation intake form from a law office where Clement sought legal advice relating to the issues in her current lawsuit. (*Id.* at 28–32.)

On January 23, 2013, the UH Defendants and ASC filed opposition papers, ("UH's Opp.," "ASC's Opp." (Doc. Nos. 81, 82)), and, on February 1st, Clement filed a reply. ("Pl.'s Rply" (Doc. No. 83).)

## DISCUSSION

In her response to the Order to Show Cause, Clement argues that the Court should equitably toll the statutes of limitations for her claims pursuant to the doctrine of fraudulent concealment. (Pl.'s Resp. at 1–2.) Under that doctrine, a statute of limitations will be equitably tolled if a plaintiff establishes that the defendant concealed from her the existence of a cause of action during the relevant statutory period, that the plaintiff commenced the lawsuit within that period from the time that she learned of the claim, and that the plaintiff's continuing ignorance was not attributable to a lack of diligence on her part. *Council v. Better Homes Depot, Inc.*, 2006 WL 2376381, at *8–11 (E.D.N.Y. Aug. 16, 2006) (quoting *N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)). The elements of fraudulent concealment must be pled with specificity pursuant to Federal Rule of Civil Procedure 9(b). *See Grimes v. Fremont General Corp.*, 785 F. Supp. 2d 269, 291 (S.D.N.Y. 2011); *Barkley*, 2007 WL 2437810, at *16 (citing *Armstrong v. McAlpin*, 699 F.2d 79, 90 (2d Cir. 1983)).

Clement's allegations in the complaint, in conjunction with her supplemental submissions in response to the Order to Show Cause, sufficiently establish that the accrual of her legal claims should be tolled under the fraudulent-concealment doctrine. The actionable conduct underpinning Clement's lawsuit – and the injury that Clement suffered – occurred upon the real estate closing for the purchase of her Far Rockaway house in August 2005. Clement specifically

4

alleges that defendants scheduled that closing "so as to make it difficult for her to have an attorney review her documentation, actively discouraged her from bringing an attorney to her closing, and provided an attorney for her at the closing with the allegedly false implication that he would advise her according to her interests." *Clement*, 914 F. Supp. 2d at 375. Such purported conduct was clearly "self-concealing," in that defendants took steps to hide the alleged irregularities in the closing process. *See Barkley*, 2007 WL 2437810, at *17. As prior courts have ruled, and as this Court agrees, such conduct satisfies the "concealment" prong of the fraudulent-concealment test. *See id.* ("The act of employing ostensibly independent legal counsel as part of a predatory lending scam has been held to satisfy the concealment element by several district courts in this circuit"); *see also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189 (2d Cir. 2001).[4]

Furthermore, in light of the self-concealing nature of defendants' putative wrongdoing, the fact that Clement failed to recognize the existence of a cause of action at the time of the closing, as well as in its immediate aftermath, did not evince a lack of diligence on her part under the third prong of the fraudulent-concealment test. *See Barkley*, 2007 WL 2437810, at *17. Nor would the substandard quality of the home that Clement encountered upon taking possession in November 2005 have reasonably put her on notice of any legal claim. After all, while there is little doubt that Clement "quickly realized" she was "on the receiving end of a defective product, there is a difference between being aware you got a bad deal and being aware that you were discriminated against in a systemic fashion." *Id.* The Court thus finds that the accrual of

---

[4] Defendants' contrary assertions notwithstanding (UH's Opp. at 7–9; ASC's Opp. at 4), it is of no moment that, apart from the actionable conduct pertaining to the closing, defendants took no further steps to prevent Clement's discovery of her legal claims. That is because a plaintiff "may prove the concealment element by showing *either* that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury[,] *or* that the wrong itself was of such a nature as to be self-concealing." *Hendrickson Bros.*, 840 F.2d at 1083 (emphasis supplied).

Clement's legal claims was equitably tolled up to, at the very least, some point in time *after* November 2005.

Of course, that does not end the analysis. The question becomes *how long* that tolling lasted – that is, demarcating exactly when the tolling ended and Clement's cause of action accrued. Under the "diligence-discovery rule of accrual," a cause of action accrues when a plaintiff "kn[e]w[], or should [have] know[n], enough of the critical facts of injury and causation to protect h[er]self by seeking legal advice." *Kronisch v. U.S.*, 150 F.3d 112, 121 (2d Cir. 1998); *see id.* ("in cases such as this one, where the government conceals the acts giving rise to plaintiff's claim, or where plaintiff would have reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted, the so-called 'diligence-discovery rule of accrual' applies"). While accrual does not occur at the moment that a plaintiff entertains a mere "hunch, hint, suspicion, or rumor of a claim," such inklings "do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." *Id.* Importantly, too, discovery of the "critical facts" of injury and causation "requires only knowledge of, or knowledge that could lead to, basic facts of the injury"; a plaintiff "need *not* know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999) (emphasis supplied); *see Thompson v. Metro Life Ins. Co.*, 149 F. Supp. 2d 38, 48 (S.D.N.Y. 2001) (noting that it is "not necessary for a plaintiff to understand every permutation of his or her injury, rather the plaintiff simply needs to have a hint or suspicion of the injury and its cause to be put on inquiry notice").

According to Clement, she did not know enough "critical facts" of her injury and causation until October 9, 2007, when she and her neighbors spoke with a representative of the Congress of Racial Equality about United Homes' reputedly fraudulent practices. (Pl.'s Resp. at

6

4.) ASC, conversely, insists that Clement should have reasonably known of her cause of action fifteen months earlier, by July 1, 2006. (ASC's Opp. at 3.) The UH Defendants peg that date even sooner: February 2006. (UH's Opp. at 9.)

As explained below, the Court agrees with ASC that Clement knew, or should have known, of her cause of action by, at the latest, July 1, 2006. To that end, in her responses to interrogatories during discovery, Clement outlined the contours of her lawsuit by expressly relying on seven factors to support her claim that defendants committed systemic racial discrimination and fraud. Those factors are: (1) that Clement purchased her home on a street comprised of all newly-constructed multi-family dwellings sold by United Homes, and every homeowner was black or Hispanic; (2) that the members of her homeowner's association were all first-time, unsophisticated homebuyers; (3) that United Homes provided an attorney to represent each of those homeowners at their respective closings; (4) that each homeowner completed the closing process within one month of initially consulting a United Homes sales representative; (5) that all United Homes advertisements Clement observed were in minority communities or on train lines passing through minority communities; (6) that all United Homes visual advertisements depicting homeowners in new homes showed an ethnic minority; and (7) that every customer Clement saw upon visiting United Homes' office was black or Hispanic. (*See* Pl.'s Resp. to Defs' First Set of Interr. to #8 (Doc. 81-1 at 3).)

Crucially, Clement became aware of each of the factors listed above within only a few months of moving into her new home in November 2005. As Clement emphasizes (Pl.'s Resp. at 2), the house's shoddy construction was apparent almost as soon as she took possession. As a result, in the winter of 2005–06, Clement wrote several letters of complaint to United Homes

7

about various construction defects and repair issues.[5] (*Id.*) After those complaints went unanswered, Clement "initiated a meeting" with seven of her fellow neighbors whom, collectively, had formed the noted homeowner's association. (*Id.*) In a letter dated July 1, 2006, which Clement personally drafted on behalf of the homeowner's association, she notified United Homes of a number of structural and plumbing problems common to the eight properties owned by herself and her seven neighbors.[6] (Pl.'s Resp. at ECF, p. 12.)

Clement's letter is significant. The letter evinces that, by no later than July 1, 2006, Clement had met with other similarly-situated United Homes clients (all of whom were first-time minority homebuyers), knew about the common problems plaguing each neighbor's home, and knew (or had the opportunity to learn) of each neighbor's virtually identical experience with United Homes concerning the financing and purchasing of his or her respective house. This included the fact that United Homes identically appraised each house, scheduled each closing within only one month of the client initially consulting a United Homes sales representative, and provided each client with an attorney at the closing.[7]

In this context, by July 1, 2006, Clement certainly had, at a minimum, a "hint or suspicion" of the predatory and discriminatory lending practices about which she now

---

[5] Beach 29th Street LLC – the "project developer" to whom Clement sent those complaint letters – was incorporated by United Homes and shared its business address. (Pl.'s Resp. at 3.)

[6] In that letter, the homeowner's association stated that the owners of the eight named properties had "cooperatively convened for the purpose of addressing issues as they relate to the building and plumbing structures" of those properties, and for which the homeowners sought "priority attention and remedial action." (Pl.'s Resp. at ECF p. 12.) Those problems included roof and skylight leaks, poor water pressure, damaged sub-flooring, backyard sinkholes, dampness and moisture in the first-floor apartments, and possible water damage beneath the house. The association requested copies of the developer's architectural drawings, code compliance checklist, and any other information pertaining to water and moisture problems in the crawl spaces of the first-floor apartments. The association further sought a "detailed action plan" or, "at a minimum," a "timetable" for remedying the noted problems. (*Id.*)

[7] Of course, based on Clement's personal experiences even before her own closing, she knew that United Homes allegedly targeted minorities in its advertising, and that the customers who typically visited the United Homes office were minorities.

complains. *Thompson*, 149 F. Supp. 2d at 48.[8] Indeed, this embodies precisely the kind of situation that, as courts have specifically noted, would reasonably put a reverse-redlining victim on notice of her legal claims. *See Barkley*, 2007 WL 2437810, at *17 ("Without meeting other United Homes clients or explaining their circumstances to an attorney who responsibly represented their interests, plaintiffs had no way of knowing exactly how and why they had been victimized"); *Council*, 2006 WL 2376381, at 9 ("A victim of discrimination may not know that he or she has been the target of discrimination until meeting other victims or becoming familiar with lending practices in minority communities").

Finally, the Court disagrees with Clement that, insofar as defendants supposedly failed to respond to her post-closing requests for information and documentation,[9] and did not promptly or adequately address the alleged construction defects in the house, such conduct further tolled the statutes of limitations. (*See* Pl.'s Resp. at 6.) In the first place, in the TILA context, "courts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations." *Williams v. Aries Financial, LLC*, 9-CV-1816 (JG) (RML), 2009 WL 3851675, at * 7 (E.D.N.Y. Nov. 18, 2009). Clement's TILA claim is thus not subject to tolling solely on the basis of any alleged nondisclosure of information. Nor is the Court persuaded that any such nondisclosure or non-responsiveness by defendants would toll the statute of limitations for Clement's discrimination-based claims. As already explained, the crux of that lawsuit derives from information that Clement actually knew, or reasonably should have

---

[8] The UH Defendants contend that the statutes of limitations began to run in February 2006 – an argument that appears to be based on Clement's February 2006 fax to United Homes complaining about problems with the house, coupled with Clement's statement that, following "several" such complaints, she initiated the homeowner's association meeting. (Pl.'s Resp. at 2; *id.* at ECF p. 10.) Because it is unclear whether that meeting occurred in February 2006 – and because, even if that that were the case, it would be unrealistic to impute knowledge of a cause of action to Clement as soon as that meeting occurred – the Court finds that the date of Clement's letter to United Homes (*i.e.*, July 1, 2006) is a more reasonable point at which to mark the accrual of her claims.

[9] Clement states that United Homes failed to provide her with the "signed versions" of her closing paperwork, as well as "HOA incorporation documents and code compliance documentation." (Pl.'s Resp. at 4–5; Pl.'s Rply at 5–6.)

known, within only a handful of months of moving into her home. Nothing allegedly withheld from Clement would have interfered with her ability to discover that action. If anything, as the UH Defendants point out (UH's Opp. at 9), the purported construction defects, and defendants' failure to remedy those defects, should have constituted an "additional red flag" to Clement, thereby putting her on heightened notice of any such legal claims.

Thus, to reiterate: given the totality of the circumstances, the Court finds that Clement knew or reasonably should have known about her legal claims by July 1, 2006, and that her causes of action accrued on that day. Because Clement did not commence this lawsuit until May 10, 2010, each of her claims – except for that predicated on state-law fraud – is time-barred by the applicable statute of limitations.[10]

Turning to Clement's remaining state-law fraud claim, this Court "may decline to exercise supplemental jurisdiction over a claim if [it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (citations and internal quotation marks omitted); *see One Commc'ns Corp. v. J.P. Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law

---

[10] The statute of limitations for Clement's state-law fraud claim is six years. The statutes of limitations for her remaining claims vary from as short as one year (under the Truth in Lending Act) to as long as three years (under, *inter alia*, the federal civil rights statutes). The Court addressed the relevant statute of limitations for each claim in its December 27th Order. *See Clement*, 914 F. Supp. 2d at 379–71. It bears emphasis, as the Court previously held, that Clement did not viably allege any actionable conduct on the part of defendants after the real estate closing on August 5, 2005. Consequently, there is no legal theory under which any of Clement's claims, except for state-law fraud, could conceivably be timely. *Id.* at 373–74.

10

claims"); *Sullivan v. City of New York*, 2011 WL 3806006, at *6 (S.D.N.Y. Aug. 29, 2011) ("where federal claims are dismissed before trial, the state [claims] should be dismissed as well") (quoting *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir.1998)).

The Court declines to exercise supplemental jurisdiction over the remaining state-law fraud claim. That cause of action is therefore dismissed without prejudice.

**CONCLUSION**

For the reasons stated above, each of Clement's legal claims, except for that alleging state-law fraud, is dismissed as time-barred. The Court declines to exercise supplemental jurisdiction over Clement's state-law fraud claim, which is dismissed without prejudice.

The Clerk of Court is directed to close this case. The Clerk is further directed to transmit a copy of this Memorandum and Order, along with the accompanying judgment, to plaintiff via U.S. Mail, and to note the mailing on the docket.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
July 3, 2014

_____
ROSLYNN R. MAUSKOPF
United States District Judge